UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JAMES HEIPLE,

        Plaintiff,

v.                                                       Case Number 07-12319-BC
                                                       Honorable Thomas L. Ludington

JEFFERSON PILOT FINANCIAL
INSURANCE COMPANY,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO AFFIRM
PLAN ADMINISTRATOR'S DENIAL OF BENEFITS,
DENYING PLAINTIFF'S MOTION TO REVERSE
PLAN ADMINISTRATOR'S DENIAL OF BENEFITS,
AFFIRMING PLAN ADMINISTRATOR'S DENIAL OF BENEFITS,
DISMISSING PLAINTIFF'S COMPLAINT WITH PREJUDICE,
AND CANCELLING HEARING**

The parties' cross-motions address an insurer's denial of benefits to Plaintiff James Heiple, under the procedure applicable to plans under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, as set out by the Sixth Circuit in *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998), is before the Court. The parties' submissions have been reviewed, and the Court is satisfied that the facts and the law have been sufficiently set forth in the motion papers. Oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

I.

Plaintiff, the personal representative of the estate of his deceased wife, Linda Heiple, filed suit against Defendant Jefferson Pilot Financial Insurance Company, after Defendant denied benefits

allegedly due under a life insurance policy. Defendant removed the case here from state court, because Plaintiff's claims involve a benefit plan under ERISA.

On February 6, 2006, based on her death certificate, Plaintiff's decedent was killed in a two vehicle accident, in which she was determined to be the at-fault driver. No autopsy was performed. On February 9, 2006, her employer submitted a claim form to Defendant for the life insurance benefit and for the accidental death and dismemberment benefit, each for $65,000. On February 20, 2006, Plaintiff filed a separate claim form with Defendant.

On March 8, 2006, Defendant notified Plaintiff by letter that it had approved payment of the life insurance benefit. Thereafter, Defendant requested a copy of the toxicology report to evaluate the request for the accidental death and dismemberment benefit.

On April 5, 2006, Defendant notified Plaintiff by letter that it denied payment of the accidental death and dismemberment benefit. Defendant stated that a toxicology report from the hospital showed a positive result for cannabis and cocaine without a physician's prescription. The cannabis screen for tetrahydrocannabinol (THC) used a cutoff level of 50 nanograms per milliliter, and the screen for cocaine relied on a cocaine metabolite cutoff level of 300 nanograms per milliliter. The policy contains an exclusion for losses that result from the voluntary use of drugs not prescribed by a physician. Specifically, the accidental death and dismemberment provision includes an exclusion for voluntary use of drugs, at § 7: "Benefits are not payable for any loss to which a contributing cause is: . . . voluntary use of drugs; except when prescribed by a Physician . . . ." Administrative Record (AR) 163. The letter concluded by advising Plaintiff that he could request a review of the claim.

On June 20, 2006, Plaintiff did request a review. Plaintiff stated that his wife had surgery

2

on February 1, 2006, which resulted in her use of sedatives and anesthesia. He also maintained that she took Zoloft, multivitamins, and non-prescription sleeping pills. He provided "research from the internet showing [that] medications taken by the decedent could result in false positives as to cocaine and marijuana."[1] He further argued that the drugs present in Plaintiff's decedent's system were either prescribed by a physician or that Defendant had no evidence that they affected her motor skills and coordination. He noted that she was at a work awards ceremony shortly beforehand and that no one had observed her under the influence of any drugs at that time. He also attested that, for the length of their marriage, his wife he never used controlled substances without a prescription. He also enclosed a copy of the police report, which stated that, on a 25-degree and cloudy day, Plaintiff's decedent's vehicle failed to yield at a stop sign and pulled into the path of a southbound vehicle. The report also stated that the roadway had no defects and was dry.

On August 30, 2006, Defendant denied Plaintiff's appeal of the initial denial of the accidental death and dismemberment benefit. Defendant reviewed Plaintiff's assertions, as well as stating that Plaintiff's decedent had had a biopsy of her breast performed on February 1, 2006, without complication and under intravenous sedation and local anesthestic. The toxicology screen for Plaintiff's decedent was positive for cannabis and cocaine, but showed no evidence of amphetamines, barbiturates, or several other drugs. Defendant concluded the rationale for denying Plaintiff's claim for the accidental death and dismemberment benefit under the policy's drug exclusion as follows:

> Based on the review of the claim file and your internet research, there is no medical basis why presence of cannabis and cocaine in a drug screen because of

---

[1] Websites cited by Plaintiff include the following: Ask Erowid, Ultimate Detox, www.passyourdrugtest.com, www.oyston.com, and emedicine. AR 60-64.

> having a breach biopsy under [intravenous] sedation and local anesthetic five days previously. There is no condition where taking Zoloft, a multivitamin and over-the-counter sleeping pill would result in a positive drug screen for these drugs. No medical evidence was provided on appeal where any of the treating physician, surgeon or anesthesiologist who can confirm your theory of cocaine and cannabis were in the [intravenous] sedation and local anesthetic and this would have contributed to her death five days later.

AR 34. The letter ended by describing the final stage of the appeal process.

On October 13, 2006, Plaintiff further appealed the denial of benefits. He also requested additional time to gather materials pertinent to Plaintiff's decedent's medical care and behavior prior to the collision. Defendant accommodated that request with a 60-day extension of time. On October 31, 2006, Plaintiff provided Defendant with seven affidavits of Plaintiff's decedent's former co-workers, all of whom had interacted with her at the awards ceremony and none of whom noticed any condition that suggested she was under the influence of drugs.

On December 4, 2006, Defendant advised that it would commence review of Plaintiff's appeal at the earlier of the end of the 60-day extension or Defendant's receipt of additional information from the medical providers.

On January 18, 2007, Defendant denied Plaintiff's second appeal. After quoting the summary of the physician who reviewed the file (which is nearly identical to the excerpt above), Defendant stated that Plaintiff provided no additional medical information on which to base an alternate determination. After reviewing the circumstances of Plaintiff's decedent's death, Defendant again concluded that the policy exclusion for voluntary use of drugs without a prescription still applied. (Dr. Anthony Metcalfe, in his review of the file on August 23, 2006, concluded that cocaine or cannabis alone would be "significant and contributory" to Plaintiff's decedent's death, and that the presence of both would be even more so. AR 37.)

4

Plaintiff then filed suit against Defendant. On July 10, 2007, the Court granted Defendant's motion to strike Plaintiff's request for a jury demand. On September 15, 2007, the Court denied Plaintiff's motion to apply a standard of review other than arbitrary and capricious.

In his brief on the instant motions, Plaintiff asserts – without record citation – that Plaintiff's decedent's doctor had prescribed Fentanyl and Lortab, which are derivatives of opiates. In advancing that claim, Plaintiff acknowledges that "this information was not available at the time of review by the Plan Administrator and this Court has stricken it from consideration for this appeal." Pl. Br., p. 4. In his brief, Plaintiff also attacks the conclusory fashion of Dr. Metcalfe's statement that either cocaine or cannabis would be contributory to Plaintiff's decedent's death, Dr. Metcalfe's lack of qualification in the fields of toxicology or pharmacology, and the plan administrator's purported failure to follow up on an alleged letter regarding the possibility of a false positive to Plaintiff's decedent's doctor. Again, Plaintiff identifies no record evidence that he previously raised these arguments with Defendant.

II.

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This case was removed here from state court on the basis of this provision, because Plaintiff asserts a claim against an ERISA benefits plan.

This Court has previously ruled that the appropriate standard of review of Defendant's denial of benefits is the arbitrary and capricious standard. This highly deferential review is appropriate when the ERISA-regulated plan at issue provides clearly grants discretion to the plan administrator.

*Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 595, 597 (6th Cir. 2001).

The Sixth Circuit has described the arbitrary and capricious standard of review as "the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (internal quotes and citation omitted). When applying this standard, the Court must determine whether the administrator's decision was reasonable in light of the available record evidence. Although the evidence may be sufficient to support a contrary finding, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision was neither arbitrary nor capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). Yet the deferential standard of review does not equate with a rubber stamping – a court must review the quantity and quality of the medical evidence on each side. *Evans v. Unumprovident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).

A decision reviewed according to the arbitrary and capricious standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of Am. Health & Retirement Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Substantial evidence supports an administrator's decision if the evidence is "rational in light of the plan's provisions." *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). The court generally considers only that evidence presented to the plan administrator at the time he or she determined the employee's eligibility in accordance with the plan's terms. *Id*. The court's review thus is limited to the administrative record. *See Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998).

In the Sixth Circuit, the summary judgment standard of Federal Rule of Civil Procedure 56

does not apply to ERISA enforcement claims. *Id*. at 619 (Gilman, J., concurring) (Ryan, J., joining). In reaching its findings of fact and conclusions of law, the district court may only consider evidence contained in the administrative record. *Id*. The only exception occurs when evidence outside the administrative record might show a lack of due process or bias by the administrator. *Id*. In that limited case, any pre-hearing discovery should be limited to just those inquiries.

Here, the parties have essentially filed cross-motions to affirm or reverse the plan administrator's decision, and the Court will construe Plaintiff's motion as one to reverse the plan administrator's denial of benefits, rather than as a motion as for summary judgment, as identified by Plaintiff. Plaintiff's decedent's insurance policy contains a provision that excludes losses to which voluntary drug use, without a prescription, is "a contributing cause." Based on the police report, Plaintiff's decedent failed to yield to a stop sign and turned in front of an oncoming vehicle on a clear day on a dry roadway without defect. She was at fault, and the toxicology report for her showed that she tested positive for metabolites of cannabis and cocaine. Defendant's reviewing physician concluded that the presence of those substances would have been contributory to the collision. Thus, in light of the evidence presented to the plan administrator, Defendant did have a rational basis for its denial of benefits, in light of the provision excluding losses contributed to by voluntary drug use. A reasonable explanation for Defendant's decision does exist.

Plaintiff advances many arguments, but none of those arguments show that Defendant lacked a rational basis for its decision or that the evidence did not support its decision. Plaintiff questions whether Defendant has sufficiently established a causal connection between the metabolites in Plaintiff's decedent's bloodstream and her death, particularly where seven co-workers believed she left an event uncompromised by any drug use. Plaintiff maintains that the reviewing physician was

7

conclusory in his analysis, unqualified in relevant areas, failed to account for the effect of pain relievers, and was not provided information later available. Plaintiff objects that Defendant did not wait for Plaintiff's decedent's doctor's input on these questions, particularly as to the possibility of a false positive. While these reasons might provide a basis for disagreeing with Defendant's decision, none of these reasons show that Defendant lacked evidentiary basis or reasonable rationale for its decision. Moreover, apart from generalized statements, these arguments are largely absent from the administrative record. To the extent he advanced these arguments during the administrative proceedings, Plaintiff did little more than provide copies of postings on little known websites and provided no medical basis for contradicting Defendant's decision. Thus, to the extent better articulated before this Court, these arguments cannot now provide a basis for reversing the plan administrator's decision.

Finally, Plaintiff also alludes to the possibility of a conflict of interest, in that Defendant both pays for claims and makes decisions about whether to pay them. Plaintiff, however, provides no factual basis for suggesting that Defendant acted improperly here. Accordingly, the Court will grant Defendant's motion to affirm the plan administrator's denial of benefits and deny Plaintiff's motion to reverse the plan administrator's denial of benefits, because Plaintiff has not shown that Defendant's decision was arbitrary or capricious.

III.

Accordingly, it is **ORDERED** that Defendant's motion to affirm the plan administrator's denial of benefits [dkt #20] is **GRANTED** and Plaintiff's motion to reverse the plan administrator's denial of benefits [dkt #18] is **DENIED**. The plan administrator's denial of benefits is **AFFIRMED**, and Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 8, 2008

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 8, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS